# In the United States Court of Federal Claims

No. 14-371C

(Filed Under Seal: June 10, 2014)

Reissued: June 23, 2014[1]

_____

| | |
|---|---|
| CHEROKEE NATION TECHNOLOGIES, LLC, | * * * |
| Plaintiff, | * * Bid protest reviewing corrective action and |
| v. | * sole-source bridge contract award; Motion for * preliminary injunction; Bridge contract for |
| THE UNITED STATES, | * information technology services; 10 U.S.C. § * 2304; FAR § 6.302–1(c); Advance planning |
| Defendant. | * requirement for sole-source contract award * not satisfied; Preliminary injunction issued; |
| and | * Performance of bridge contract enjoined. |
| CHENEGA FEDERAL SYSTEMS, LLC, | * * |
| Defendant-Intervenor. | * |

_____

**ORDER GRANTING PRELIMINARY INJUNCTION**
_____

Before the court, in this bid protest action, is plaintiff's motion for a preliminary injunction. For the reasons that follow, the court hereby **GRANTS, in part**, plaintiff's motion.[2]

**I.    Background**

On March 6, 2014, the Bureau of Indian Affairs (BIA) awarded an information technology services contract to Cherokee Nation Technologies, LLC (Cherokee), in the amount

---

[1] An unredacted version of this opinion was issued under seal on June 10, 2014. The parties were given an opportunity to propose redactions, but no such proposals were made. Nevertheless, the court has incorporated some minor changes into this opinion.

[2] Owing to the urgent need of the parties for a ruling on this matter, the court's recitation of the facts and the law is necessarily brief.

of $4,459,331.00, for a six-month base period and four one-year option periods.  The contract was to begin on April 1, 2014.  The procurement was a Buy Indian Set-Aside in accordance with the Buy Indian Act, 25 U.S.C. § 47.  On March 24, 2014, one week before the predecessor contract, performed by Chenega Federal Systems, LLC (Chenega), was to end, Chenega filed a timely protest of the award to Cherokee with the General Accountability Office (GAO).

Subsequently, the BIA informed GAO that it intended to take corrective action in response to Chenega's protest consisting of: (i) termination of Cherokee's contract for convenience; (ii) cancellation of the solicitation; (iii) reevaluation of the agency's procurement approach; and (iv) issuance of one or more new solicitations to fulfill the agency's needs.  On March 27, 2014, the BIA decided to award a bridge contract.  On or about March 31, 2014, the BIA asked Chenega if it was interested in the bridge contract, to which Chenega responded in the affirmative.  Because the Chenega contract expired that day, the agency pressed to finalize the contract quickly.

On April 1, 2014, the BIA approved a Justification For Other Than Full And Open Competition with respect to a bridge contract, which allegedly was designed to meet the agency's information technology needs while the corrective action was being carried out.  On April 2, 2014, BIA awarded a provisional bridge contract (A14PC00076) to Chenega in the amount of $3.6 million, with a period of performance from April 2, 2014, to September 30, 2014, and one option period from October 1, 2014, to March 31, 2015.  The Justification identified 41 U.S.C. § 253(c)(1) and FAR 6.302-1(a)(2) as the bases for permitting other than full and open competition.

On April 7, 2014, the BIA issued an internal memorandum requesting cancellation of the award to Cherokee and the subsequent contract.  On April 8, 2014, the BIA notified GAO that it intended to take corrective action and requested that GAO dismiss Chenega's bid protest.  On April 16, 2014, the BIA terminated Cherokee's contract for convenience.

On April 30, 2014, plaintiff filed a complaint, seeking, *inter alia*, a temporary restraining order and preliminary injunction enjoining the BIA from continuing with its proposed corrective action; enjoining the BIA from procuring IT services through the sole-source bridge contract with Chenega; and a variety of other forms of relief.  On the same day, it filed its motion for a preliminary injunction.  On May 15, 2014, plaintiff filed its renewed motion for a preliminary injunction.  On May 21, 2014, defendant filed its opposition to plaintiff's motion, as well as a motion to dismiss part of plaintiff's complaint based on a lack of subject-matter jurisdiction.  Briefing was completed on plaintiff's motion on May 27, 2014.  Oral argument on plaintiff's motion was held on May 29, 2014.

## II.    DISCUSSION

This court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  The

jurisdictional grant is "without regard to whether suit is instituted before or after the contract is awarded." *Id*. As a threshold jurisdictional matter, however, the plaintiff in a bid protest must show that it has standing to bring the suit. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citation omitted). And, at least insofar as the bridge contract in question, defendant has admitted that the court has jurisdiction to review plaintiff's claim.

To obtain a preliminary injunction, plaintiff must establish four factors: "'[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'" *Am. Signature, Inc. v. United States*, 598 F.3d 816, 823 (Fed. Cir. 2010) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). "No one factor is dispositive to the court's inquiry as 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" *CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357, 390 (2010) (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)). However, the first two factors are the most critical, and "a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009). "[B]ecause injunctive relief is relatively drastic in nature, a plaintiff must demonstrate that its right to such relief is clear." *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 709 (2006).

Initially, in determining whether plaintiff is likely to succeed on the merits, the court must determine whether it will likely overturn the award decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4). The court may overturn a procurement decision where "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009). In the court's view, plaintiff has provided strong indication that both the award decision, and the associated corrective action here, were arbitrary, capricious, an abuse of discretion and otherwise contrary to law.

The sole-source procurement in this case is governed by 10 U.S.C. § 2304, which states in relevant part:

> The head of an agency may use procedures other than competitive procedures only when --
>
> (1) the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency;
>
> (2) the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the

>agency is permitted to limit the number of sources from which it solicits bids or proposals . . . .

10 U.S.C. § 2304(c).  The agency may not justify a sole-source award by reason of its own "lack of advance planning."  10 U.S.C. § 2304(f)(4)(A).  The Federal Acquisition Regulation (FAR) has incorporated these principles in FAR 6.302–1(c).  48 C.F.R. § 6.302-1(c).

As in other bid protests, a sole-source procurement decision may be set aside if: "(1) the sole-source award lacked a rational basis; or (2) the sole-source procurement procedure involved a violation of a statute, regulation, or procedure."  *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (citing *Impresa*, 238 F.3d at 1332).  Under the first ground, "[t]he test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Id*. at 1085-86 (citations omitted).  Under the second ground, the court examines the sole-source procurement for violations of law or regulation, in the absence of which the protestor would have had a substantial chance of receiving an award under either a competitive bidding process (where the sole-source procedure was made irrational by the violations), under the sole-source procedure or in some other fashion.  *Id*. at 1086 (citations omitted); *see also KSD, Inc. v. United States*, 72 Fed. Cl. 236, 255 (2006).

In this case, defendant all but admits that the BIA failed to plan adequately for the transition of the procurement here and, in particular, for the use of the sole-source contract in question.  The decisional law strongly suggests that this was an inappropriate use of the sole-source regulations.  *See Innovation Dev. Enters. of Am. v. United States*, 108 Fed. Cl. 711, 727 (2013); *L-3 Comm's v. United States*, 85 Fed. Cl. 667, 674 (2009); *WorldWide Language Res., Inc.*, 2005 CPD ¶ 206 (Comp. Gen. Nov. 14, 2005); *see also Filtration Dev. Co., LLC v. United States*, 60 Fed. Cl. 371 (2004).  While the court understands that the planning in this regard cannot be perfect or even error-free, *see Infrastructure Def. Techs. v. United States*, 81 Fed. Cl. 375, 298 (2008), it is obvious here that the agency failed to perform any real advanced planning, beyond having the prior contract awardee perform the work and invoking the sole-source procurement rules in Chenega's favor.  *See Reilly's Wholesale Produce*, 73 Fed. Cl. at 715.  Waiting until the last minute does not absolve the BIA of its obligations in this regard – a different view would turn the sole-source rules on their head.  Accordingly, the court believes that plaintiff has demonstrated a likelihood of success on the merits.

The next factor is to determine whether plaintiff will likely suffer irreparable harm in the absence of preliminary relief (or, conversely, that one of the parties will likely experience harm if that relief is forthcoming).  When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction."  *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993).  In the court's view, it would appear that the agency has available alternative remedies that will preclude the use of a sole-source procurement in Chenega's favor, and thereby would avoid the competitive harm produced by the continued use of the current contracting vehicle.  And, during the course of the argument here, defendant admitted that there are alternatives available other than continuing the current arrangement.

Beyond this, the court must consider whether the balance of hardships leans in plaintiff's favor.  This requires a consideration of the harm to defendant and to the intervening defendant.  On this count, defendant meekly asserts that not being able to use a sole-source contract will prevent it from providing needed services.  But, in fact, defendant again has all but admitted that the BIA has alternatives to providing the transition services in question – at least in the short term – without employing a sole-source contract of the sort to be given to Chenega here.  And again, it should not be overlooked that the circumstances here were dictated by the agency's lack of planning.  Defendant, moreover, as well as the public at large, have a long-term interest in ensuring that contracts are awarded on a competitive basis and that exceptions to that rule are only as necessary.  *See Serco, Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008).  Given the fact that there is no indication that issuing a preliminary injunction will impair the agency's ability to obtain needed services – at least in the short run – the court believes that these long-term interests are paramount here and are best served by issuing the proposed injunction.  *See PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003); *Metcalf Constr. Co. v. United States*, 53 Fed. Cl. 617, 645 (2002); *DTH Mgmt. Grp. v. Kelso*, 844 F. Supp. 251, 255 (E.D.N.C. 1993).  In these circumstances, the balance of hardships tilts in Cherokee's favor.

Plaintiff also contends that the public's interest will be served by granting the requested preliminary injunctive relief.  "Clearly, the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid."  *PGBA*, 57 Fed. Cl. at 663; *see also Rotech Healthcare, Inc. v. United States*, 71 Fed. Cl. 393, 430 (2006); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 269 (1997); *Magellan Corp.*, 27 Fed. Cl. at 448.  In this case, though, the circumstances presented are even worse, as it appears that the agency authorized the use of a contracting vehicle that limited competition and favored the prior incumbent.  *See Innovation Dev. Enters. of Am., Inc.*, 108 Fed. Cl. at 727.  In the instant case, the public's interest likewise lies in preserving the integrity of the competitive process.

### III.   CONCLUSION

The court finds that the prerequisites for issuing a limited preliminary injunction have been fully satisfied here.  In consideration of the above:

1. Plaintiff's motion for a preliminary injunction should be, and is hereby, **GRANTED, in part**.

2. Defendant, acting by and through the Department of Interior (and any agency thereof), as well as the Bureau of Indian Affairs, are hereby **PRELIMINARILY ENJOINED** from performing on contract No. A14PC00076 until a successor contract is issued, with the existing bridge contract with Chenega Systems allowed to proceed only until July 10, 2014.  Said parties must also suspend any related activities that may result in additional obligations being incurred by the United States under this contract.

3.      Pursuant to RCFC 65(a), plaintiff shall give security in the amount of $100,000 for the payment of such costs and damages as may be incurred or suffered in the event that future proceedings prove that this preliminary injunction was issued wrongfully.  Plaintiff shall file proof of security with the Clerk of Court.  The Clerk shall hold the bond until this case is closed.

4.      The court is prepared to move promptly to a determination of the ultimate merits of this matter.  Toward that end, on or before June 20, 2014, the parties shall file with the court a joint status report proposing a schedule for final resolution of this matter.

5.      This order shall be published as issued after June 20, 2014, unless the parties identify, with particularity, protected and/or privileged materials subject to redaction prior to said date.

**IT IS SO ORDERED**.

                                            s/Patricia  E. Campbell-Smith
                                            Patricia E. Campbell-Smith, Chief Judge
                                            for Judge Francis M. Allegra